**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**AMY ADAMS**                                          **CIVIL ACTION**

**VERSUS**                                               **NO. 21-2153**

**ASHLEIGH LANDRY, ET AL.**                   **SECTION "B"(4)**

<u>**ORDER AND REASONS**</u>

Before the Court are defendants Ashleigh Landry, Tina Babin, and the Lafourche Parish School Board's motions to dismiss for failure to state a claim and for lack of jurisdiction (Rec. Docs. 23, 24), the defendants' motion for a more definite statement (Rec. Docs. 23, 24), plaintiff's response in opposition (Rec. Doc. 35), and defendants' replies in support of their motions to dismiss (Rec. Docs. 44, 45).

For the reasons discussed below,

**IT IS ORDERED** that defendants Ashleigh Landry, Tina Babin, and the Lafourche Parish School Board's motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (Rec. Docs. 23, 24) are **GRANTED**, dismissing plaintiff's claims against Tina Babin individually and in her official capacity as president of Lafourche Parish School Board with prejudice and dismissing plaintiff's federal law claims against Ashleigh Landry and the Lafourche Parish School Board without prejudice; and declining without prejudice supplemental jurisdiction over the remaining state law claims;

**IT IS FURTHER ORDERED** that plaintiff may seek leave to amend the complaint as to federal law claims against Ashleigh Landry and the Lafourche Parish School Board **no later than Monday, May 30, 2022**, to address below discussed deficiencies in the complaint. If leave to amend is allowed, the state law claims would be reinstated;

**IT IS FURTHER ORDERED** that motions for a more definite statement (Rec. Docs. 23, 24) are hereby **DISMISSED AS MOOT**.

I.    FACTS AND PROCEDURAL HISTORY

On January 2, 2013, Jerry T. was awarded custody of his son, minor TMT. Rec. Doc. 24-3. More than six years later on October 28, 2019, Jerry T. agreed to grant defendant Ashleigh Marcel Landry temporary custody of TMT, a minor under the age of seventeen. Rec. Doc. 24-2; Rec. Doc. 35 at 2; *see also* Rec. Doc. 1 at 3. Landry is an adult resident of Lafourche Parish in Louisiana, who was an employee of the Lafourche Parish School Board (the "Board") system and the principal of Lockport Middle School located in Lafourche Parish. *Id.* at 1-2.

Over the course of the fall 2020 semester, Landry engaged in a sexual relationship with TMT. *Id.* at 3. Landry "sexually exploit[ed]" TMT during normal school and employment hours of Lockport Middle School. *Id.* at 9. While Landry was principal of Lockport Middle School, she would periodically transport TMT from the school to her home, where TMT also lived, to engage in sexual

2

relations. *Id.* at 3; Rec. Doc. 35 at 2. In March 2021, she confessed to this relationship, as well as to exchanging lascivious/sexual text messages with TMT. Rec. Doc. 1 at 3. Landry was then arrested for felony carnal knowledge of a juvenile in March 2021. *Id.* Plaintiff alleges that the Board "was made aware of the sexual relationship between Landry and TMT . . . prior to Landry's arrest." *Id.* at 4. On March 9, 2021, the Seventeenth Judicial District Court of Louisiana granted custody of TMT to plaintiff Amy Adams, an adult resident of Lafourche Parish, Louisiana and the biological mother of TMT. Rec. Doc. 35-1. Prior to March 2021, the Board allegedly failed to take action to protect plaintiff's son from Landry's sexual advances, intentionally allowed Landry to continue her sexual exploitation of TMT, and failed to properly monitor or supervise Lockport Middle School over the course of Landry's sexual exploitation. Rec. Doc. 1 at 4, 9. Plaintiff alleges that even after her arrest, Landry maintains an ongoing sexual relationship with TMT. *Id.* at 4.

On November 19, 2021, plaintiff filed a complaint with this Court alleging that defendants Landry, individually and in her official capacity of principal of Lockport Middle School, Tina Babin, individually and in her official capacity as president of the Board, and the Board violated TMT's substantive due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. *Id.* at 2, 9. Plaintiff also alleges defendants are liable for intentional

infliction of emotional distress, negligence, sexual misconduct, and intentional spoilation of evidence under Louisiana State law. *Id.* at 5, 9. Moreover, plaintiff asserts that Babin and the Board are vicariously liable for Landry's tortious conduct. *Id.* at 9. Accordingly, plaintiff claims defendants are liable for general and special damages, including emotional distress and mental anguish, as well as attorney's fees and costs. *Id.* On January 31, 2022, defendants filed the instant motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and in the alternative, a motion for more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Rec. Docs. 23, 24.

## II.  LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B. Defendants' 12(b)(1) Motion**

In addition to their 12(b)(6) motion, defendants also move under Federal Rule of Civil Procedure 12(b)(1). *See* Rec. Doc. 24-1 at 6-7. Plaintiff argues that "federal question claims can be dismissed for lack of subject matter jurisdiction (rather than failure to state a claim) only when the claim is not even 'colorable,' *i.e.*, it is wholly insubstantial and frivolous or is immaterial and made solely for purposes of obtaining jurisdiction." Rec. Doc. 24-1 at 7 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). Defendants urge us to dismiss plaintiff's claims for lack of subject matter jurisdiction, rather than for

5

failure to state a claim, because "there is a complete absence of facts which lead to a conclusion that Babin, or Landry for that matter, were acting under state law." Rec. Doc. 24-1 at 13-14. Nevertheless, this case does not meet the standard for jurisdictional dismissal.

"The Supreme Court has enunciated a strict standard for dismissals for lack of subject matter jurisdiction when the basis of jurisdiction is also an element in the plaintiff's federal cause of action." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). However, there is an exception for a suit where the alleged claim under the Constitution or federal statutes "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *WickFire, L.L.C. v. Laura Woodruff*, 989 F.3d 343, 349 (5th Cir. 2021) (quoting *Bell*, 327 U.S. at 682-83). "A claim is wholly insubstantial and frivolous if it is foreclosed by previous decisions of the Supreme Court." *Id.* Generally, "[i]f the challenge to jurisdiction is also a challenge to the existence of a federal cause of action, a district court should assume jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (quoting *Williamson*, 645 F.2d at 415) (internal quotation marks omitted). "The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those

cases where the federal claim is clearly immaterial or insubstantial." *Williamson*, 645 F.2d at 416. "The nonexistence of a cause of action is no proper basis for a jurisdictional dismissal." *Stem*, 813 F.3d at 210 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998)).

Here, defendants do not meet their burden of proving that plaintiff's claim against Landry is "clearly immaterial or insubstantial." *See id.* at 416. Defendants assert that from 2019-2021, Landry was TMT's legal guardian. *See* Rec. Doc. 24-1 at 12; 24-2. Because Landry was TMT's legal guardian, allegedly "[e]ach time Landry exercised control over TMT, and particularly when she removed him from school to 'transport TMT . . . to her home . . . ,' she was exercising her authority as his legal guardian, not as his principal." Rec. Doc. 24-1 at 13. Thus, defendants claim "Landry's employment with the LPSB is an ancillary fact, being used to gain federal jurisdiction over the LPSB," and Landry was "not in her official capacity as the principal of Lockport Middle School or as a state actor." *Id.* at 11, 13.

However, even assuming Landry was TMT's legal guardian during the time period in question, we cannot say that plaintiff's claim that Landry was acting under color of state law is frivolous or is clearly "foreclosed by previous decisions of the Supreme Court." *See Wickfire*, 989 F.3d at 349. Despite Landry's role as TMT's temporary legal guardian, Landry was also principal of Lockport

Middle School while she was abusing TMT, and thus, very well could have been acting under color of state law when engaging in this misconduct. *See* Rec. Doc. 1 at 2. Moreover, defendants never provide a Supreme Court case that they allege forecloses plaintiff's claim. *See Wickfire*, 989 F.3d at 349-51. Accordingly, as plaintiff alleges federal question jurisdiction pursuant to § 1983 and 28 U.S.C. § 1331, the Court has jurisdiction over plaintiff's federal claims regardless of whether they have merit under Federal Rule of Civil Procedure 12(b)(6). *See* Rec. Doc. 1 at 2; *see also Williamson*, 645 F.2d at 416 (noting "*Bell v. Hood*'s general prohibition of jurisdictional dismissals which implicate the merits of the plaintiffs' case").[1]

### C. Plaintiff's Standing to Sue on Behalf of Minor

In Louisiana, "[a]n unemancipated minor does not have the procedural capacity to sue." La. Code Civ. Proc. Ann. art. 683 (2021); *see also Lewis v. Ascension Par. Sch. Bd.*, 662 F.3d 343, 347 (5th Cir. 2011). "[T]he tutor is the proper plaintiff to sue to enforce a right of the unemancipated minor." La. Code Civ. Proc. Ann. art. 683 (2021)*; see also Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014). "If both parents have acknowledged their child born outside of

---

[1] To the extent defendants also argue that the Court does not have jurisdiction over plaintiff's state law claims under Federal Rule of Civil Procedure 12(b)(1), the Court has the discretion to maintain any of plaintiff's state law claims after dismissing her federal claims. *See infra* Section II.F.

marriage, the judge shall appoint as tutor the one by whose care the best interests of the child will be served." La. Civ. Code Ann. art. 256 (2021).

Defendants argue that plaintiff lacks capacity to sue on behalf of TMT because TMT's father "is actually the proper party to bring this matter on behalf of the minor." Rec. Doc. 23-3 at 9; *see also* Rec. Doc. 24-1 at 14-15. However, defendants seem to be mistaken. Defendants assert, and plaintiff does not dispute, that TMT was born outside of marriage and that TMT's mother and father both acknowledge him. *See* Rec. Doc. 23-3 at 9; *see generally* Rec. Doc. 35. Thus, the proper tutor in this case is whomever the judge appoints as the one who will serve the best interests of the child. *See* La. Civ. Code Ann. art. 256 (2021). On March 9, 2021, the Seventeenth Judicial District Court of Louisiana awarded custody of TMT to plaintiff. Rec. Doc. 35-1.[2] As TMT's custodial parent, she thus has standing to bring lawsuits on behalf of her unemancipated minor child. *See* La. Code Civ. Proc. Ann. art. 683; *Pleasant*, 764 F.3d at 448. Accordingly, plaintiff has the procedural capacity to bring the instant suit against defendants.

---

[2] "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). Accordingly, the judgment on plaintiff's custody of TMT does not convert this motion into one for summary judgment. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Fed. R. Civ. P. 12(b)) ("[I]f matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.").

### D. Tina Babin

Babin and the Board contend that plaintiff's § 1983 claim against Babin must fail because Babin did not become president of the Board until March 2021, months after Landry and TMT's sexual relationship began. Rec. Doc. 24-1 at 7. Moreover, even after becoming president, defendants claim Babin was still not a supervisory school official and lacked any knowledge of the events underlying plaintiff's cause of action. *Id.* In response, plaintiff states she does not oppose Babin and the Board's motion to dismiss plaintiff's claims against Babin. Rec. Doc. 35 at 3. Accordingly, the Court dismisses as unopposed plaintiff's claims against Tina Babin, individually and in her official capacity as president of the Board.

### E. Ashleigh Landry

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis I.S.D.*, 233 F.3d 871, 874 (5th Cir. 2000) (internal quotation marks omitted). For a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment." *Doe v. Taylor*

10

*Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)). In the Fifth Circuit, school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment, and "physical sexual abuse by a school employee violates this right." *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 998 (S.D. Tex. 2014) (citing *Taylor*, 15 F.3d at 451-52); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

A school employee acts under color of state law in sexually abusing a student when "a real nexus exist[s] between the activity out of which the violation occurred and the teacher's duties and obligations as a teacher." *Rains*, 66 F.3d at 1406-07 (quoting *Taylor*, 15 F.3d at 452 n.4). Additionally, "a defendant acts under color of state law if he 'misuses or abuses his official power' and if 'there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.'" *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)); *see also Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996). Courts often find that a school employee has acted under color of state law when the sexual abuse and wrongful conduct "occurred on school property" and the defendant used her position as a school employee to molest the child. *See Humble*, 25 F. Supp. 3d at 998; *Rains*, 66 F.3d at

1407 (finding that the school employee acted under color of state law when the teacher had considerable interaction with the child at school, had physical contact with the minor at school, gave her rides from school, delivered personal notes to her, and gave gifts to her); *Taylor*, 15 F.3d at 447-48 (finding same when teacher began exchanging notes with the student at school, giving her gifts, took her to lunch during the school day, walked her to class, and engaged in sex both on and off school grounds); *cf. Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (finding school employee did *not* act under the color of state law because he first molested the student five months after the student withdrew from the school where the defendant taught, there was no evidence of physical sexual abuse occurring at the school, the school employee was not the student's teacher "before, during, and after the sexual abuse," and the school employee's contacts with the student "were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official").

Here, plaintiff satisfies the first prong of the § 1983 inquiry, but misses the mark on the second. Plaintiff alleges that Landry, former principal of Lockport Middle School and a school employee of the Lafourche Parish School District, sexually abused TMT. *See* Rec. Doc. 1 at 3 ("Landry confessed to exchanging lascivious/sexual test messages and engaging in sexual relations with TMT."). As physical sexual abuse violates school children's

"liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment," plaintiff does allege a violation of a right secured by the United States Constitution. *See Humble*, 25 F. Supp. 3d at 998; *James*, 535 F.3d at 373.

The more difficult question is whether Landry engaged in this wrongful conduct "under color of state law." Plaintiff alleges that Landry and TMT's sexual relationship began in the fall of 2020. Rec. Doc. 1 at 3. She states that in Landry's "official capacity as principal at Lockport Middle School," she "would periodically transport TMT from Lockport Middle School to her home to engage in sexual relations with TMT." *Id.* Plaintiff continues that:

> [d]uring all material times herein: Landry was employed by [the Board] as a teacher and acting in the course and scope of her employment with [the Board]; all incidents of Landry intentionally sexually exploiting TMT, during normal school and employment hours of Lockport Middle School to teach educational course material to TMT, and other students.

*Id.* at 9.

With these allegations, and taking plaintiff's complaint as a whole, plaintiff has not yet stated a claim for relief regarding whether Landry violated TMT's due process rights "under color of state law." Plaintiff does allege that Landry "intentionally sexually exploit[ed] TMT, during normal school and employment hours of Lockport Middle School to teach educational course material to TMT," but it is unclear whether this allegation means

13

Landry was TMT's teacher or "had considerable interaction with [the minor] at school." *See* Rec. Doc. 1 at 9; *Rains*, 66 F.3d at 1405. Plaintiff alleges that Landry admitted to "sexual relations with TMT," but the allegations do not include whether, and what part of, Landry's contacts with the student were "part of [her] duties as a state employee" or were "school-sponsored." For example, without more information, it is unclear whether any physical sexual abuse occurred on school property or a school-sponsored event. *See generally* Rec. Doc. 1; *see also Becerra*, 105 F.3d at 1047.

Additionally, it is possible that Landry's transportation of TMT from school to her home was reflective of Landry "us[ing] her position" as a school employee to molest a child. *See, e.g.*, *Rains*, 66 F.3d at 1407. However, without any facts as to whether Landry's relationship with TMT was school-related, the allegation that Landry was "acting in her official capacity" when transporting TMT is conclusory and requires factual support. *See Snow Ingredients*, 833 F.3d at 520 (5th Cir. 2016).[3] At the pleading stage, plaintiff

---

[3] Defendants allege that Landry was not acting under color of state law when she abused TMT because at that time, Landry was also TMT's temporary legal guardian. *See* Rec. Doc. 24-1 at 12-13; Rec. Doc. 24-2. To support their contention, defendants attach a signed custody agreement sworn by a notary public. *See* Rec. Doc. 24-2; *see also* Rec. Doc. 35 at 1 (plaintiff admitting Landry "hous[ed] the minor T.M.T. at her home with Kip Landry"). When considering a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, a district court may consider documents "attached to the motion to dismiss" when the documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*,

need only provide "a short and plain statement" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has not yet alleged facts sufficient to demonstrate that Landry was acting under color of state law when she sexually abused TMT.

**F. Lafourche Parish School Board**

"After finding that (1) a rights violation occurred (2) under color of state law, only then do we ask a third and final question: Who are the state actors responsible for the constitutional violation?" *Rains*, 66 F.3d at 1407 (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). "[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the school district." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). However, "given a real nexus, school supervisors who are deliberately indifferent to a student's constitutional liberty interest in her bodily integrity are themselves the state actors who perpetrated the constitutional tort, regardless of whether the individual who actually made illicit physical contact

---

343 F.3d 533, 536 (5th Cir. 2003). The custody agreement is central to plaintiff's claim that Landry was acting under color of state law when she abused TMT, but plaintiff does not seem to refer to this agreement in her complaint. *See generally* Rec. Doc. 1. Accordingly, the Court does not rely on the custody agreement in determining that plaintiff has not yet alleged facts sufficient to state a § 1983 claim against Landry.

with the student was acting under color of state law." *Id.*, as supplemented on denial of reh'g (Apr. 7, 1997).

A "local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). A municipality "cannot be held liable under § 1983 on a *respondeat superior* theory;" nevertheless, "a municipality may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)) (citations omitted). Liability of a school district under § 1983 requires the following: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012).

Plaintiff alleges that the Board deprived TMT of his constitutional rights to substantive due process because it "was made aware of the sexual relationship between Landry and TMT by petitioner Amy Adams prior to Landry's arrest in March 2021" and "failed to take any action to protect TMT from Landry's sexual advances prior to March 2021." Rec. Doc. 1 at 4. In doing so,

plaintiff claims that the Board "clearly practiced an official policy and practice of deliberate indifference to plaintiff's right to an educational environment free of sexual congress between a mandated reporter and a minor student." Rec. Doc. 35 at 2.

Despite these allegations, plaintiff fails to state a claim that the Board was liable for Landry's sexual abuse under § 1983. Because the Court finds that plaintiff has not alleged facts sufficient to state a claim that Landry violated TMT's constitutional rights under color of state law, then Landry's conduct cannot be the constitutional violation underlying the Board's liability pursuant to § 1983. *See Covington*, 675 F.3d at 867 (noting that because the person who sexually abused the minor was not a state actor, then plaintiff must allege another state action that could give rise to a constitutional violation); *Floyd-Evans v. Moorehead*, No. 3:14cv214-DPJ-FKB, 2016 WL 5374148, at *8 (S.D. Miss. Sept. 26, 2016) (finding that because plaintiff did not present evidence to show the school employee abused the minor while acting in his official capacity, the school employee's actions could not form the predicate constitutional violation); *Doe v. Dixon*, No. W-14-CV-457, 2015 WL 589632, at *5 (W.D. Tex. Feb. 11, 2015) (finding that because the sexual abuse of the child did not occur under color of state law, there was no state action). Without an underlying constitutional violation, there can be no § 1983 liability imposed on the Board, and plaintiff has failed to

state a claim against the Board under § 1983. *See Becerra*, 105 F.3d at 1048 ("Without an underlying constitutional violation, an essential element of municipal liability is missing."); *Dixon*, 2015 WL 589632, at *5 (dismissing claims against the school district because the sexual abuse of the child did not occur under color of state law).

However, it is possible that plaintiff offers "an alternative argument" that the state actor here is the Board which was deliberately indifferent to TMT's right to be free from sexual assault. *See* Rec. Doc. 35 at 1-2; *see also Floyd-Evans*, 2016 WL 5374148, at *8; *see also Becerra*, 105 F.3d at 1048, as supplemented on denial of reh'g (Apr. 7, 1997). If a plaintiff alleges that "school supervisors" are "deliberately indifferent to a student's constitutional liberty interest in her bodily integrity," then the school supervisors are the state actors who perpetrated the constitutional tort, "regardless of whether the individual who actually made illicit physical contact with the student was acting under color of state law." *Becerra*, 105 F.3d at 1048, as supplemented on denial of reh'g (Apr. 7, 1997). Nevertheless, this potential argument does not apply here because plaintiff sued the board as "a political subdivision of the State of Louisiana," not as individuals. Rec. Doc. 1 at 2; *see also Floyd-Evans*, 2016 WL 5374148, at *8 (applying *Becerra* to "individual state actors," not a board or school district). There is a "crucial distinction

between a section 1983 claim against a school official in his or her supervisory (*i.e.* individual) capacity, and a section 1983 claim against a school district or members of the Board of Trustees in their official capacity." *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 543 (W.D. Tex. 2007).

In plaintiff's opposition, she provides the standard in which a supervisory school official can be held personally liable for a subordinate's violation of a student's constitutional right to bodily integrity. *See* Rec. Doc. 35 at 2. However, plaintiff does not state a claim against a school official who was tasked with supervising Landry.[4] Instead, she brings a cause of action against the Board, which is "a political subdivision of the State of Louisiana." Rec. Doc. 1 at 2.[5] Accordingly, plaintiff must state a claim under municipal liability and allege three elements: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of

---

[4] Plaintiff originally sued Tina Babin, who perhaps was a supervisory school official, but in plaintiff's opposition, she stipulated to dismissing Tina Babin in her individual and official capacity. *See* Rec. Doc. 1 at 2; Rec. Doc. 35 at 3; *see also supra* Section II.D.

[5] In her opposition, plaintiff seems to suggest that because Landry was principal of Lockport Middle School, the standard for supervisory school officials' liability under § 1983 should apply to Landry. *See* Rec. Doc. 35 at 2 (stating the standard and arguing that "Defendant Landry then utilized her role as principal and employee to engage in deliberate indifference towards the constitutional rights of minor T.M.T. to prevent or stop her abuse of T.M.T."). However, it is unclear why plaintiff applies the supervisory official liability standard to Landry. "[A] supervisory school official can be held personally liable for a *subordinate's* violation" of a student's constitutional right to bodily integrity in physical sex abuse cases. *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 51 (5th Cir. 1995) (emphasis added). That, as principal, Landry may play a supervisory role to other school employees, does not mean the supervisory school official standard applies to herself as the perpetrator of the sexual abuse.

constitutional rights whose 'moving force' is the policy or custom." *Pitrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Because the Court finds that plaintiff did not allege facts sufficient to demonstrate that Landry was acting under color of state law when she abused TMT, and plaintiff did not allege another state action that could give rise to a constitutional violation,[6] then plaintiff cannot satisfy the third element of municipal liability. *See Pitrowski*, 237 F.3d at 578. Thus, plaintiff fails to state a claim against the Board under § 1983.

Even if the Court did find that plaintiff sufficiently alleged that Landry acted under color of state law, it is unclear what is the "official policy" under which plaintiff claims municipal liability. *See generally* Rec. Doc. 1. Plaintiff seems to suggest that because the Board "failed to take any action to protect TMT from Landry's sexual advances prior to March 2021," the Board "clearly practiced an official policy and practice of deliberate indifference to plaintiff's right to an educational environment

---

[6] In plaintiff's opposition, she mentions that "in her role as minor TMT's principal, Landry violated her obligation as a mandated reporter in committing criminal acts with her sexual relationship with minor TMT." Rec. Doc. 35 at 1. It is possible that through this assertion plaintiff argues that regardless of whether Landry sexually abused TMT under color of state law, the Board is still liable under a special relationship or state-created danger theory. *See Covington*, 675 F.3d at 855-866. However, whether that is indeed plaintiff's intention is unclear, and furthermore, plaintiff does not include these theories of liability in her complaint. *See Skinner v. Gautreaux*, 549 F. Supp. 3d 493, 499 (M.D. La. 2021) (quoting *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."); *Kennedy v. Chase Manhattan Bank USA, NA*, 359 F.3d 833, 839 (5th Cir. 2004) (limiting consideration of a motion to dismiss under 12(b)(6) to the allegations set forth in the complaint).

free of sexual congress between a mandated reporter and a minor student." Rec. Doc. 1 at 4; Rec. Doc. 35 at 2. However, the complaint does not mention a policy or practice, only plaintiff's opposition does, albeit only an inkling of one. *See Skinner*, 549 F. Supp. 3d at 499.

Perhaps plaintiff suggests that "the Board established an informal custom of ignoring or condoning sexual harassment or abuse of students such that it constituted official Board policy, and this informal custom increased the danger to Plaintiff." *Brittany B.*, 494 F. Supp. 2d at 542. If so, and it is unclear whether plaintiff suggests as much, then plaintiff has not alleged facts sufficient to demonstrate the Board had actual or constructive knowledge of Landry's misconduct. *See id.* Plaintiff's claim that the Board "was made aware of the sexual relationship between Landry and TMT by petitioner Amy Adams prior to Landry's arrest in March 2021," is conclusory. *See* Rec. Doc. 1 at 4. In plaintiff's opposition, she claims that the Board was "aware of the sexual activities between Ashleigh Landry and minor TMT during the relevant times" because in the presence of other teachers at the school, "her daughter was subjected to jokes about sexual relations between Ashleigh Landry and minor TMT when the daughter matriculated to Lockport Middle School." Rec. Doc. 35 at 3. Again, these claims were not raised in the complaint. *See Kennedy*, 359 F.3d at 839. And even if they were, they do not state "whether the

alleged jokes occurred before or after Landry's arrest, when knowledge of the relationship would have been widespread." *See* Rec. Doc. 45 at 2. Nor do they demonstrate that the Board, rather than merely teachers at the school, had actual or constructive knowledge of Landry's sexual misconduct.

**G. State Law Claims**

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of 28 U.S.C. § 1367] if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Priester v. Lowndes Cnty.*, 354 F.3d 414, 425 (5th Cir. 2004); *Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999) (affirming dismissal of pendent state law claims when "there remained the need for a full-blown jury trial"). The decision of "whether or not to exercise pendent jurisdiction after dismissing a case's federal causes of action is within the discretion of the district court." *Williams v. DiVittoria*, 777 F. Supp. 1332, 1341 (E.D. La. 1991) (citing *Rosado v. Wyman*, 397 U.S. 397, 404-05 (1970)); *see also Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999) (noting "the wide discretion vested in the trial court to order a remand of state claims on the heels of a dismissal of federal claims"). "Pendent state law claims should be remanded when it would be in the best interest of 'judicial economy, convenience, fairness, and comity.'" *Tex. First Nat. Bank v. Wu*,

347 F. Supp. 2d 389, 401 (S.D. Tex. 2004) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"The main reason courts keep jurisdiction over state claims after the federal claims have been dismissed is judicial economy." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Judicial economy generally "weighs in favor of retaining federal jurisdiction only when the federal claims are dismissed after a substantial expenditure of federal resources, such as a trial on the merits." *Id.* When substantial pretrial activity has followed removal, remand is still appropriate when the parties' work product could be taken, with little loss, to the state litigation. *Guzzino*, 191 F.3d at 595. Because "the general rule is that a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendent jurisdiction," then we should only maintain jurisdiction over plaintiff's state law claims if judicial economy, convenience, fairness, and comity disfavor remand. *See Tex. First*, 347 F. Supp. 2d at 401.

As the Court dismisses the claims in which it has original jurisdiction, we may decline to exercise jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). A trial has not yet occurred and is not imminent, proceedings are at a relatively early stage, and the parties' preparatory steps for trial, if any, will not be wasted. *See Parker & Parsley Petroleum*

*Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992); *Sibley*, 184 F.3d at 490; *Williams*, 777 F. Supp. at 1341; *Guzzino*, 191 F.3d at 595. Thus, judicial economy, convenience, fairness, and comity favor declining supplemental jurisdiction over of plaintiff's state law claims.

New Orleans, Louisiana this 4th day of May, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE