UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY ADAMS | CIVIL ACTION |
| VERSUS | NO. 21-2153 |
| ASHLEIGH LANDRY, ET AL. | SECTION "B"(4) |

ORDER AND REASONS

Before the Court are defendants Ashleigh Landry and Lafourche Parish School Board's motions to dismiss for failure to state a claim (Rec. Docs. 52, 51), plaintiff Amy Adams' response in opposition (Rec. Doc. 53), and defendants' replies in support of their motions to dismiss (Rec. Docs. 57, 59).

**IT IS ORDERED** that defendant Ashleigh Landry's motion to dismiss (Rec. Doc. 52) is **DENIED**, with retention over supplemental state law claims against Landry.

**IT IS FURTHER ORDERED** that defendant Lafourche Parish School Board's motion to dismiss pursuant to Rule 12(b)(6) (Rec. Doc. 51) is **GRANTED**, dismissing claims against the Board without prejudice.

I. FACTS AND PROCEDURAL HISTORY

This matter concerns TMT, a minor child under age seventeen and the natural son of plaintiff Amy Adams ("Adams"). Rec. Doc. 50 at 2-3. Adams, on behalf of minor TMT, alleges defendant Ashleigh Landry ("Landry") "as principal . . . had unrestricted access" to

1

TMT's student file and personal history.[1] Rec. Doc. 50 at 3. Exploiting her knowledge of minor TMT's difficult family circumstances, Landry leveraged her credibility and trust as a principal to convince TMT's natural parents to grant her temporary legal custody, and successfully gained temporary custody on October 28, 2019. *Id.* at 3-4. Landry is an adult resident of Lafourche Parish in Louisiana, who was an employee of the Lafourche Parish School Board (the "Board") system and the principal of Lockport Middle School located in Lafourche Parish. *Id.* at 1-2.

Over the course of 2020, while she was principal of Lockport Middle School and simultaneously possessed temporary legal custody of TMT, Landry "engaged in a sexual relationship" with TMT. *Id.* at 5. Landry "sexually exploit[ed]" TMT during normal school and employment hours of Lockport Middle School, and her behavior included discussing sexual activity with TMT while the two were in private and exchanging lascivious/sexual text messages with TMT. *Id.* at 5-6, 15. Additionally, Adams adds in the amended complaint that "Landry had sexual relations with TMT on the property of Lockport Middle School at least once in early 2020." *Id.* at 5. This relationship also extended to non-school hours, when Landry would periodically transport TMT from the school to her home, where TMT also lived, to engage in sexual relations. *Id.* at 7.

---

[1] TMT's alleged personal history involved "a household and personal history of substance abuse issues" that led to "family strife" and uncertainty over "who would take responsibility for minor TMT." Rec. Doc. 50 at 3.

Adams avers she discovered this illicit relationship because she had another child who matriculated into Lockport Middle School during the fall 2020 semester. *Id.* at 8. The child reported to Adams that "fellow schoolchildren and teachers would openly joke and discuss [] Landry's sexual relationship with minor TMT," indicative that "other teachers and/or mandated reporters had actual and/or constructive knowledge of the sexual relationship." *Id.* Adams reported the sexual relationship to Lafourche Parish Sheriff's Office by November 2020 and Landry was arrested for felony carnal knowledge of a juvenile in March 2021. *Id.* at 8, 5. According to Adams, even after her arrest, Landry continued the sexual relationship and would instruct TMT on how to sneak into her bedroom overnight while her husband was away. *Id.* at 6, 9.

Adams also contends the Board "was made aware of the sexual relationship between Landry and TMT . . . prior to Landry's arrest." *Id.* at 9. Prior to March 2021, the Board allegedly failed to take action to protect TMT from Landry's sexual advances, intentionally allowed Landry to continue her sexual exploitation of TMT and failed to properly monitor or supervise Lockport Middle School over the course of Landry's sexual exploitation. *Id.* at 9, 12, 15. Adams points to different aspects of the Board's website to show that the "absence of reporting requirements or tools on [the Board's] website reflect a glaring implicit endorsement of

the type of illicit activity and sexual harm minor TMT suffered."[2] Rec. Doc. 50 at 11. Adams avers this "established an informal custom of ignoring or condoning sexual harassment or abuse of students such that it constituted official Board policy." *Id.*

On June 7, 2022, Adams filed an amended complaint with this Court alleging defendant Landry, individually and in her official capacity of principal of Lockport Middle School, and the Board violated TMT's substantive due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. *Id.* at 2. Adams also alleges defendants are liable for intentional infliction of emotional distress, negligence, sexual misconduct, and intentional spoilation of evidence under Louisiana state law. *Id.* at 11, 12-13, 15, 16. Moreover, Adams asserts the Board is vicariously liable for Landry's tortious conduct. *Id.* at 15. Accordingly, Adams claims defendants are liable for general and special damages, including emotional distress and mental anguish, as well as attorney's fees and costs. *Id.*

On May 4, 2022, the Court granted defendants' motions to dismiss (Rec. Doc. 23, 24) and accordingly (1) dismissed plaintiff's claims against Tina Babin individually and in her

---

[2] Adams offers examples of the website's alleged deficiencies, including: the "SAFETY page" for teachers discussing only workplace injury reporting and worker's compensation as opposed to mentioning responsibilities of mandated reporters; the "Crime Stoppers Bayou Region" landing page is not an official designated entity for reporting purposes; and how the only publicly available online reporting tool's express statement that the resource is for students intentionally omits reference to teachers or other mandated reporters. Rec. Doc. 50 at 9-10.

4

official capacity as president of Lafourche Parish School Board with prejudice; (2) dismissed plaintiff's federal law claims against Ashleigh Landry and the Lafourche Parish School Board without prejudice; and (3) declined supplemental jurisdiction over the remaining state law claims without prejudice. Rec. Doc. 46. Adams was granted leave to amend and filed an amended complaint on or around July 7, 2022. *Id.*; Rec. Doc. 50. Defendants filed the instant motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Rec. Docs. 51, 52.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B. Ashleigh Landry**

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (internal quotation marks omitted). For a cause of action under section 1983 for violations of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th

6

Cir. 1994) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)). In the Fifth Circuit, school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment, and "physical sexual abuse by a school employee violates this right." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 998 (S.D. Tex. 2014) (citing *Taylor*, 15 F.3d at 451-52); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

A school employee acts under color of state law in sexually abusing a student when "a real nexus exist[s] between the activity out of which the violation occur[ed] and the teacher's duties and obligations as a teacher." *Rains*, 66 F.3d at 1406-07 (quoting *Taylor*, 15 F.3d at 452 n.4) (some quotation marks omitted). Additionally, "a defendant acts under color of state law if he 'misuses or abuses his official power' and if 'there is a nexus between the victim, the improper conduct, and [the defendant's] performance of official duties.'" *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)); *see also Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996). Courts often find that a school employee acted under color of state law when the sexual abuse and wrongful conduct "occurred on school property" and the defendant used her position as a school employee to molest the child. *See Humble*, 25 F. Supp. 3d at 998; *Rains*, 66 F.3d at 1407 (finding that the school

7

employee acted under color of state law when the teacher had considerable interaction with the child at school, gave her rides from school, delivered personal notes to her, and gave gifts to her); *Taylor*, 15 F.3d at 447-48 (finding same when teacher began exchanging notes with the student at school, gave her gifts, took her to lunch during the school day, walked her to class, and engaged in sex both on and off school grounds); *cf. Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (finding school employee did not act under the color of state law because he first molested the student five months after the student withdrew from the school where the defendant taught, there was no evidence of physical sexual abuse occurring at the school, the school employee was not the student's teacher "before, during, and after the sexual abuse," and the school employee's contacts with the student "were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official").

Plaintiff's amended complaint again satisfies the first prong of the section 1983 inquiry. Adams alleges Landry, former principal of Lockport Middle School and a school employee of the Lafourche Parish School District, sexually abused TMT. *See* Rec. Doc. 50 at 5 ("Over the course of 2020 . . . while Landry was still employed as principal of Lockport Middle School, Landry engaged in a sexual relationship with minor TMT"). As physical sexual abuse violates school children's "liberty interest in their bodily

8

integrity protected by the Due Process Clause of the Fourteenth Amendment," plaintiff sufficiently alleges a violation of a right secured by the United States Constitution. *See Humble*, 25 F. Supp. 3d at 998; *Taylor*, 15 F.3d at 451-52; *Rains*, 66 F.3d at 1406.

The second inquiry is whether Landry engaged in this wrongful conduct "under color of state law." Having amended her complaint, Adams now alleges Landry "as principal . . . had unrestricted access to the student file and personal history of minor TMT and his family and family history," Rec. Doc. 50 at 3. As Adams tells it, Landry "exploited her presumed credibility and trust as a principal in charge of middle school aged children to convince minor TMT's natural parents to grant Landry temporary legal custody over minor TMT," ultimately becoming TMT's temporary legal guardian on October 28, 2019. *Id.* at 3-4. Adams further alleges "Landry would frequently discuss topics like sexual activity privately with TMT;" "controlled his environment by transporting him to and from school to her home where she had sexual relations with minor TMT;" "exchanged lascivious/sexual text messages;" and "had sexual relations with TMT on the property of Lockport Middle School at least once in early 2020." *Id.* at 5.

Much of plaintiff's amended complaint recites conclusory allegations that Landry acted in her official capacity, for which she fails to provide specifics. For instance, Adams neglects to clarify whether Landry exchanged lascivious/sexual

9

text messages *during* school hours or while *on* school property. *Id.* at 5 (emphasis added). The same ambiguity again arises with allegations that Landry discussed sexual activity with TMT in private or that the principal purchased snacks and foods to reward TMT for reciprocating the sexual activity. *Id.* at 7. Although these examples meet the "considerable interaction" requirement, these allegations still do not address whether the interactions occurred at school. *Rains*, 66 F.3d at 1407 (noting the coach "had considerable interaction with [the student] at school before providing numerous examples).

However, the amended pleading contains two additional short and plain factual statements showing Adams is entitled to relief under section 1983. Fed. R. Civ. P. 8(a)(2). First, the allegation that Landry used her position to access TMT's student file to learn of the minor's challenging personal history, convinced TMT's parents to transfer custody, and ultimately gaining legal custody suggests Landry acted under color of state law. Rec. Doc. 50 at 3-4. That is, the allegation demonstrates Landry was TMT's principal "before, during, and after" the sexual abuse while plausibly implicating "part of [her] duties as a state employee." *Becerra*, 105 F.3d at 1047. Second, the allegation that Landry "had sexual relations with TMT on the property of Lockport Middle School at least once in early 2020" adequately asserts physical sexual abuse occurred on school property. Rec. Doc. 50 at 5; *See Rains*, 66 F.3d

10

at 1407 (noting the coach "had considerable interaction with [the student] at school"); *Taylor*, 15 F.3d at 448 (noting the teacher and student had repeated sexual contact which occurred "both on and off the school grounds"); *Humble*, 25 F. Supp. 3d at 998 (noting some of the "wrongful conduct occurred on school property," violating the Fifth Circuit's precedent that school children have a right to be free from physical sexual abuse).

Taking all well-pleaded factual allegations in the amended complaint as true and interpreting it in the light most favorable to the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Adams' amended complaint has done that.

Because of Landry's two-fold roles as both legal guardian and principal, plaintiff's complaint plausibly pleads that Landry's collective actions exploited her "power and status" to manipulate TMT, and that she pursued TMT both during school hours and on school grounds. *Rains*, 66 F.3d at 1406-07. As such, plaintiff's amended petition against Landry is sufficient to survive a motion to dismiss for failure to state a claim. However, to succeed on the merits, the assertion that TMT's physical abuse occurred on school grounds must be substantiated through discovery.

**C. Lafourche Parish School Board**

Since the Court finds Adams alleged facts sufficient to state a claim that Landry violated TMT's constitutional rights under color of state law, we now consider whether the Board has liability pursuant to Section 1983.

Within the Fifth Circuit, even if "a deprivation has occurred at the hands of a state actor," the Court must still consider "the separate question of which other persons, apart from the immediate perpetrator, may be held liable under § 1983." *Rains*, 66 F.3d at 1407. "After finding that (1) a rights violation occurred (2) under color of state law, only then do we ask a third and final question: Who are the state actors responsible for the constitutional violation?" *Id.* (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)).

A "local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Although a municipality "cannot be held liable under § 1983 on a *respondeat superior* theory . . . a municipality may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)) (citations omitted). Liability of a school district under section 1983

12

requires the following: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012).

### 1. Policymaker

Despite amending her complaint, Adams again fails to provide factual support for the conclusory claim that the Board is liable under *Monell* and section 1983. Plaintiff again alleges the Board deprived TMT of his constitutional rights to substantive due process because it "was made aware of the sexual relationship between Landry and TMT by petitioner Amy Adams prior to [] Landry's arrest in March 2021" and further "failed to take any action to protect TMT from Landry's sexual advances prior to March 2021." Rec. Doc. 50 at 9. Adams argues the state actor is the Board, which was deliberately indifferent to TMT's right to be free from sexual assault. Rec. Doc. 53 at 1; *see also Floyd-Evans v. Moorehead*, No. 3:14cv214-DPJ-FKB, 2016 WL 5374148, at *8 (S.D. Miss. Sept. 26, 2016); *see also Becerra*, 105 F.3d at 1048, as supplemented on denial of reh'g (Apr. 7, 1997).

As noted in the Court's previous Order and Reasons (Rec. Doc. 46), when a plaintiff alleges that "school supervisors" are "deliberately indifferent to a student's constitutional liberty

13

interest in her bodily integrity," then the school supervisors are the state actors who perpetrated the constitutional tort, "regardless of whether the individual who actually made illicit physical contact with the student was acting under color of state law." *Becerra*, 105 F.3d at 1048, as supplemented on denial of reh'g (Apr. 7, 1997). Nevertheless, plaintiff's duplicative argument fails because Adams again sued the board as "a political subdivision of the State of Louisiana," not as individuals. Rec. Doc. 50 at 2; *see also Floyd-Evans*, 2016 WL 5374148, at *8 (applying *Becerra* to "individual state actors," not a board or school district). There is a "crucial distinction between a section 1983 claim against a school official in his or her supervisory (*i.e.* individual) capacity, and a section 1983 claim against a school district or members of the Board of Trustees in their official capacity." *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 543 (W.D. Tex. 2007).

In plaintiff's opposition, Adams repeats the standard a supervisory school official can be held personally liable for a subordinate's violation of a student's constitutional right to bodily integrity. *See* Rec. Doc. 53 at 2. Yet Adams still does not state a claim against any school official tasked with supervising Landry.[3] Instead, she brings a cause of action

---

[3] Adams originally sued Tina Babin who perhaps was a supervisory school official. However, because plaintiff did not oppose Babin and the Board's motion to dismiss plaintiff's claims against Babin, the Court dismissed as

against the Board, which is "a political subdivision of the State of Louisiana." Rec. Doc. 50 at 2. Because plaintiff failed to name a school official, any alleged unconstitutional actions cannot be imputed to the Board under applicable law.

2. **Official Policy**

Concerning the second analytical prong, Adams proffers allegations that the Board failed to enforce its own safety policies. *Id.* at 9. Plaintiff further points to various purported deficiencies and omissions on the Board's website[4] as "a glaring implicit endorsement of the type of illicit activity and sexual harm" and further proof the Board "established an informal custom of ignoring or condoning sexual harassment or abuse of students such that it constituted official Board policy." *Id.* at 11.

However, the reporting links on defendant's website are made available to students who wish to report issues within their school. *See* Rec. Doc. 50 at 9-10; Rec. Doc 51-1 at 6.[5] It

---

unopposed plaintiff's claims against Tina Babin, individually and in her official capacity as president of the Board. Rec. Doc. 46.

[4] Allegations of the website deficiencies include how: the "SAFETY page" for teachers fails to mention responsibilities of mandated reporters; the "Crime Stoppers Bayou Region" landing page is not an official designated entity for reporting purposes; and how the only publicly available online reporting tool's express statement that the resource is for students intentionally omits reference to teachers or other mandated reporters. *Id.* at 9-10.

[5] When considering a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, a district court may consider documents "attached to the motion to dismiss" when the documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Although plaintiff does not object to the

is a baseless exaggeration to equate the Board's offering of various reporting links for students to a deliberate failure by the Board to adopt mandated reporter policies. *Id.* Moreover, the reporting links alone also fail to meet the Fifth Circuit's definition of an official policy. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (noting one definition of official policy as "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the district . . . or by an official to whom the district has delegated policy-making authority")(internal citations omitted).

In the alternative, the Fifth Circuit has also identified a second definition for official policy. *Eugene*, 65 F.3d at 1304 ("a persistent, widespread practice of district officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents district policy. Actual or constructive knowledge of such custom must be attributable to . . . the district or to an official to whom that body had delegated policy-making authority")(internal citations omitted). Adams alleges she had another minor child

---

Board's provided policies on "Child Abuse" and "Sexually Related Student Misconduct" attached to the motion to dismiss and it is also central to the plaintiff's claim, Adams does not seem to refer to this specific policy in her complaint. *See generally* Rec. Doc. 50. Thus, the Court does not rely on the attached policy to determine whether plaintiff stated a § 1983 claim against the Board.

who matriculated into Lockport Middle School and reported to plaintiff that "fellow schoolchildren and teachers would openly joke and discuss [] Landry's sexual relationship with minor TMT" Rec. Doc. 50 at 8. Adams contends this indicates other teachers and mandated reporters "had actual and/or constructive knowledge of the sexual relationship between co-worker Landry and minor TMT." *Id.* However, plaintiff "includes no specific facts regarding by whom, to [sic] whom or when these jokes and statements might have been made" and it further leaves the question of "when said employees would have been made aware of the conduct" open-ended. Rec. Doc. 51-1 at 7; Rec. Doc. 59 at 4.

3. **Constitutional Violation**

With respect to the third inquiry of whether there is a pervasive constitutional violation, Adams similarly fails to state a claim against the Board as she is required to demonstrate with factual allegations showing "a pattern of abuses that transcend the error made in a single case." *Piotrowski*, 237 F.3d at 582 (noting "isolated unconstitutional actions by municipal employees will almost never trigger liability" under section 1983). There is no mention in the amended complaint of prior, similar instances of misconduct, and no allegations that inappropriate relationships are habitually unaddressed or ignored. Rec. Doc. 59 at 4. Instead, Adams provides a conclusory claim that "upon information or belief"

17

the Board and other mandated reporters "had actual/constructive knowledge of the sexual relationship." Rec. Doc. 53 at 3.

At the pleading stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc.*, 833 F.3d at 520. The complaint, as amended, does not demonstrate the Board, rather than merely teachers at the school, had actual or constructive knowledge of Landry's sexual misconduct.

### D. State Law Claims

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of 28 U.S.C. § 1367] if":

(1) The claim raises a novel or complex issue of State law,
(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) The district court has dismissed all claims over which it has original jurisdiction, or
(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to the statutory provisions governing the exercise of supplemental jurisdiction, the Court also balances "the relevant factors of judicial economy, convenience, fairness, and comity" *Batiste v. Island Recs. Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Within the Fifth Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state law claims *when all federal-law claims are eliminated before trial.*" *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009) (emphasis added); *see also Batiste* 179 F.3d at 227 (emphasis added). Having amended her complaint, Adams now alleges sufficient facts to state a section 1983 claim against Landry so that the Court may retain jurisdiction over her federal claim and related state claims. Further, there are no compelling reasons for declining supplemental jurisdiction.

New Orleans, Louisiana this 10th day of November 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE